```
F I L E D
      JUN 12 2009
CLERK, U.S. DISTRICT COURT
   ALEXANDRIA, VIRGINIA
```

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA          )
                                  )     1:07cr252 (LMB)
v.                                )     1:08cv1194 (LMB)
                                  )
BASIR CHAND,                      )
                                  )
        Defendant.                )

## MEMORANDUM OPINION

Before the Court is Basir Chand's pro se Motion Under 28
U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a
Person in Federal Custody ("§ 2255 motion") (Docket No. 329), in
which the defendant asks the Court to re-sentence him to time
served and allow him to depart from the United States
voluntarily.  Chand raises several issues in his motion, arguing
that his rights were violated when he was deprived of effective
assistance of counsel, the prosecutor engaged in misconduct,
disparate sentences were imposed on co-defendants, the Vienna
Convention on Consular Relations was not followed, and the final
restitution order was entered without Chand having an opportunity
to be heard.  He requests an evidentiary hearing on these issues.
For the reasons stated below, the Court finds that an evidentiary
hearing is unnecessary, and the § 2255 motion will be dismissed
without the need for a response from the United States.[1]

---

[1] "If it plainly appears from the motion, any attached
exhibits, and the record of prior proceedings that the moving
party is not entitled to relief, the judge must dismiss the
motion . . . ."  Rule 4, 28 U.S.C. foll. § 2255.

## I.  Background

On June 21, 2007, a grand jury returned an indictment charging Chand and five other co-conspirators with conspiracy, engaging in a continuing financial crimes enterprise, and multiple counts of mail fraud.  These charges arose out of multi-million dollar scheme that defrauded numerous financial institutions.  At his arraignment on June 26, 2007, Chand was represented by Alfred Robertson, who was allowed to withdraw from the case after Chand retained Thomas Abbenante, who entered his appearance on July 13, 2007.  On July 31, 2007, Chand, represented by Abbenante, pled guilty to Count 1 (conspiracy to commit mail fraud and to organize, manage, and supervise a continuing financial crimes enterprise in violation of 18 U.S.C. § 371) and Count 4 (mail fraud affecting a financial institution in violation of 18 U.S.C. § 1341) of the pending indictment, and the remaining counts against him were dismissed.  At the plea hearing, Abbenante made an oral request for reconsideration of bond, but the request was denied, and Chand remained in custody. See Change of Plea Hr'g Tr. 31-35, July 31, 2007.

Between the plea hearing and the sentencing hearing, Chand became dissatisfied with how Abbenante was representing him.  On October 1, 2007, the Court received copies of letters Chand had sent to the American Bar Association and Abbenante, in which he complained that he had "serious concerns about [Abbenante's]

2

professional ethics, poor service and lying to [Chand] as a client" and indicated that he wanted to file an official complaint against Abbenante. Despite these complaints, Chand did not file a motion to withdraw his guilty pleas.

On October 24, 2007, without any objection from Chand, Abbenante withdrew from the case after Chand retained his prior counsel, Alfred Robertson. Robertson then represented Chand at the November 9, 2007 sentencing hearing. At that hearing, Chand was sentenced to 60 months imprisonment on Count 1 and 78 months on Count 4, to run concurrent with Count 1, with credit for time served, 3 years of supervised release, and a $200 special assessment. Chand did not file an appeal of his sentence.[2]

## II. Discussion

### A. Ineffective Assistance of Counsel Claims

To succeed on an ineffective assistance of counsel claim, a movant must satisfy the two-prong test established in Strickland v. Washington, 466 U.S. 668 (1984). First, he must show that counsel's performance was "deficient." Id. at 687. Deficient performance is shown when "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." Id. at 690. However, counsel is "strongly presumed

---

[2] On October 24, 2008, the Court granted the Under Seal Motion filed by the United States, reducing the defendant's sentence to 30 months. On October 30, 2008, Chand filed a timely § 2255 motion.

to have rendered adequate assistance." Id. Second, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. When a prisoner challenges a conviction resulting from a guilty plea, Strickland's second prong requires the movant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). Chand has the burden of proving both of these prongs.

Chand contends that Abbenante was constitutionally deficient in advising him on his plea agreement and that Robertson provided ineffective assistance at the sentencing proceeding and by failing to file an appeal of Chand's sentence. Chand's numerous ineffective assistance of counsel claims will be addressed in turn.

## 1.   Ineffective Assistance as to the Plea Agreement

Chand claims that Abbenante was constitutionally deficient because he failed to "explain or properly advise" Chand during the plea negotiations and threatened Chand, forcing him to sign the plea agreement, thereby rendering his guilty pleas involuntary. Mem. Br. in Supp. of Mot. Under 28 U.S.C. § 2255 at 4. He also appears to argue that Abbenante failed to adequately represent him on issues related to his immigration status.

4

The record of the plea colloquy under Fed. R. Crim. P. 11 undermines Chand's argument that he did not voluntarily and intelligently plead guilty to Counts 1 and 4 of the indictment. During the plea colloquy, Chand was under an affirmation to tell the truth in answering all of the Court's questions. Plea Hr'g Tr. 2. He informed the Court that he was forty-three years old, had no difficulty reading, writing, understanding, or speaking English, and had completed two masters degrees in the United States. Plea Hr'g Tr. 3-4. When asked about his plea agreement, Chand stated that he had first seen a copy of the plea agreement seven or eight days before the hearing and he affirmed he had read the plea agreement "word for word." Plea Hr'g Tr. 4. Furthermore, he stated that he had met with Abbenante to discuss the plea agreement, had asked Abbenante all the questions he had about the plea agreement, and that Abbenante had answered all of his questions about the plea agreement. Plea Hr'g Tr. 5. Contrary to what he alleges in his § 2255 motion, Chand informed the Court that he did not have any questions he wanted to ask about the plea agreement and acknowledged the accuracy of the last two sentences in his plea agreement, which stated "I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this agreement and voluntarily agree to it." Plea Hr'g Tr. 5-6. Chand also answered that no one had put any force or pressure on him to plead guilty. Plea

5

Hr'g Tr. 23.

Chand is bound by his statements, made under affirmation, at the plea colloquy. See Beck v. Angelone, 261 F.3d 377, 395-96 (4th Cir. 2001) ("Absent clear and convincing evidence to the contrary, [the defendant] is bound by the representations he made during the plea colloquy." (internal quotations omitted)). Chand has presented only his own self-serving affidavit to support his claim that he was not properly advised about the plea agreement and entered it under pressure, and, thus, has not presented "evidence of sufficient evidentiary force to demonstrate that his representations were untruthful or involuntary." Id.

Next, Chand complains that Abbenante failed to protect his immigration status. Again, the record contradicts that claim. The plea colloquy put Chand on clear notice of the immigration ramifications if he pled guilty. The Court explained to Chand during the colloquy that he would be eligible for deportation if he was convicted of Counts 1 and 4, and he stated that he understood. Plea Hr'g Tr. 18. The Court also explained that if Chand were ordered deported that would not constitute a breach of the plea agreement, and Chand acknowledged that he understood that. Id. Finally, Chand was asked if he was "fully satisfied" with his attorney's representation in the case, and he answered yes. Plea Hr'g Tr. 19.

Based on the answers given by Chand under an affirmation,

there is no evidence that Abbenante's performance was deficient or that Chand's pleas were involuntarily made.   Moreover, Chand does not claim that he is innocent of either or both of the crimes to which he pled guilty.   To the contrary, during the plea colloquy he volunteered significant admissions about his conduct. For example, when asked how he became involved with the co-defendants he answered:

> Mr. Hameed approached me through Jawad Ahmad, and they asked me in the beginning can I do something computer-related . . . and a couple of months down the road, I realized that they were asking me to design some pay stub, and further down the road, they asked me "Can you design some I.D.?" . . . So I scanned some I.D.'s and changed the names and things like that . . .  six or seven months later down the road, I realized that these people are doing something related to credits and loans.

Plea Hr'g Tr. 25-26.   Chand also admitted that he made and used false identifications to make various cash withdrawals and described keeping most of the money he withdrew as compensation for the work he was doing for Hameed.   Plea Hr'g Tr. 26-27. Indeed, the relief Chand seeks – to be re-sentenced and to be allowed to voluntarily depart from the United States – is not consistent with a claim that the pleas were involuntary or that he was prejudiced by his counsel's performance because he does not claim that, but for his counsel's errors, he would not have pled guilty and proceeded to trial.   See Hooper, 845 F.3d at 475.

## 2.   Ineffective Assistance as to the Sentencing Hearing

Chand's remaining ineffective assistance of counsel claims involve the November 9, 2007 sentencing hearing, when he was represented by Robertson.   Chand asserts that Robertson was ineffective because he failed to object to an "overstatement" of Chand's role in the offense, failed to object to the prosecutor's violation of an alleged immunity order, did not provide Chand with a copy of the presentence report ("PSR") so that he might correct or contest certain information in the report, did not provide the Court with all of his reference letters, and failed to file an appeal of the sentence, even after Chand asked him to file an appeal.[3]

First, Chand argues that his counsel was constitutionally deficient because he failed to object to the "overstated" role in the offense attributed to him, which he claims led to an improper sentencing enhancement.   See Mem. Br. 8.   Chand received a two-level increase for abusing a position of trust pursuant to United States Sentencing Guidelines § 3B1.3.   Although Chand argues and avers in his affidavit that Robertson failed to object to the enhancement, see Chand Aff. ¶ 69, this contention is not supported by the record.   As the sentencing memorandum filed by

---

[3] Chand also argues that Robertson was deficient because he failed to properly handle matters related to his Chand's extradition.   These matters do not affect the inquiry into whether the imposition of the sentence violated Chand's constitutional rights.

Robertson demonstrates, he objected to the two-level enhancement for abuse of trust, arguing that such an enhancement was not supported by the facts of the case. See Def.'s Pos. of [sic] Sentencing 1-3. Moreover, at the sentencing hearing, Robertson again stated his objection to the two-level enhancement. Sentencing Hr'g Tr. 3, Nov. 9, 2007. Although the Court rejected the defense position, defense counsel's lack of success does not make his performance deficient. Cf. Bell v. Evatt, 72 F.3d 421, 429 (4th Cir. 1995) ("Standing alone, unsuccessful . . . tactics neither constitute prejudice nor definitively prove ineffective assistance of counsel.").

Next, Chand argues that Robertson failed to object to the prosecutor's violation of an alleged immunity order. There is no record of an immunity order being requested or issued in this case. As discussed below, it appears that Chand may be confusing the term "immunity order" with "proffer letter." Chand has not provided any evidence establishing that the government violated the terms of a proffer letter, and, thus, there is no support for a finding that Robertson provided ineffective assistance by failing to object to this alleged violation.

Third, Chand argues that Robertson was ineffective because he did not provide Chand with a copy of the PSR before the sentencing hearing and, thus, prevented Chand from making corrections to errors in the report. However, in his affidavit

and in a letter to Robertson that Chand provided to the Court, Chand indicated that he was informed of the contents of the PSR before his sentencing. See Chand Aff. ¶¶ 62-63; Letter from Chand to Robertson (Jan. 31, 2008) (Docket No. 200). Moreover, Chand never raised any objections to the PSR with the Court, despite the opportunity to do so, and he did not object when his lawyer declined to make any corrections, changes, additions, or deletions to the report. Sentencing Hr'g Tr. 2. Furthermore, before he began his allocution, Chand was asked if he was satisfied with the way Robertson had represented him. Sentencing Hr'g Tr. 13. He answered yes. Id. Finally, during his allocution, Chand never mentioned that he had any objections to the contents of the PSR.[4] Sentencing Hr'g Tr. 13-15. On this record, there is no evidence that Chand was deprived of effective assistance of counsel as to this aspect of his sentencing.

Chand also complains that Robertson was deficient because he failed to file all of the character letters written on his behalf. Chand does not identify the contents of these missing letters or how they might have affected his sentence. The record shows that the Court received many letters written on Chand's behalf from individuals in both the United States and Pakistan

---

[4] During his allocution, Chand reaffirmed his guilt, saying "I do know that I commit [sic] a crime against financial institution, and I am really sorry for that." Sentencing Hr'g Tr. 14.

and considered them before fashioning the sentence.  Sentencing
Hr'g Tr. 9.  Additional character letters of the type already
received would not have affected the sentence, and, thus, failure
to provide all of the letters does not support a claim that
counsel was ineffective.

Finally, Chand argues that Robertson's performance was
deficient because he failed to file an appeal of the sentence
after Chand requested that he do so.  The Fourth Circuit has held
that an attorney who disregards a defendant's unequivocal
instruction to file an appeal is per se ineffective, even if the
defendant has waived his right to appeal, as Chand did in his
guilty plea.  See Plea Agreement § 6 (waiving the right to appeal
any sentence that was within the statutory maximum); United
States v. Poindexter, 492 F.3d 263 (4th Cir. 2007).

The burden is on Chand to establish that he unequivocally
instructed Robertson to file an appeal.  The only evidence Chand
offers about his instructions to Robertson appears in paragraphs
72 and 74 of his 107 paragraph affidavit.  In paragraph 72, he
avers that "immediately after sentencing I instructed Mr.
Robertson to contest against the immunity violation[,] . . .
overstated role in the offense without factual base, and also
attack on the issue of enhancement."  He then references a letter
dated November 15, 2007 described as Exhibit J, which he claims
demonstrates "that defendant strongly advice [sic] to his defense

11

attorney Mr. Robertson to follow up any legal course against sentencing.  Mr. Robertson failed to protect his client's interest and let the time expire to file the appeal."  Chand Aff. ¶ 72.  The letter referenced in that paragraph is not attached, and therefore, is not in evidence.[5]  In paragraph 74, Chand simply repeats that "Robertson fail [sic] to appeal even though his client strongly instructed to do so" without providing any evidence to support this statement.  Chand Aff. ¶ 74.

Chand's affidavit does not explicitly state that he actually directed counsel to file an appeal.  Even if the affidavit more clearly made that assertion, without corroborating evidence that a clear request was made to Robertson, the Court finds no reason in this case to accept the veracity of the affidavit or to require a response from Robertson because the entire affidavit is inherently unreliable.

The evidence of unreliability includes the numerous inaccurate averments about the record, as discussed above. Throughout his affidavit, Chand makes claims that directly contradict the statements he made under affirmation to the Court during the Rule 11 colloquy.  Moreover, there is an extensive record of post-sentencing communications Chand sent the Court, none of which questioned the status of his appeal or complained

---

[5] Also missing from movant's papers are exhibits E, H, I, K, and L.

about Robertson's failure to file an appeal.  For example, in a letter to Robertson dated January 31, 2008, Chand vigorously criticizes Abbenante's performance and the conduct of the prosecutors.  He also asks Robertson to do various things, such as asking the probation officer about the alleged late disclosure of the PSR.  Of significance to the pending § 2255 motion is the absence of any question to Robertson about the status of the appeal Chand claims he directed Robertson to file.  See Letter from Chand to Robertson (Jan. 31, 2008) (Docket No. 200).

On March 20, 2008, the Court received an inquiry from Chand in which he questioned two docket entries in his case.  See Letter from Chand to the Clerk of Court (Mar. 14, 2008) (Docket No. 228).  Obviously, that letter establishes that Chand was reviewing the docket.  Such review would have revealed that no appeal had been filed - yet nowhere in the March 20, 2008 letter does Chand raise a question about the docket not reflecting the filing of an appeal.  See id.

On April 14, 2008, Chand wrote to the undersigned asking for a public defender to be appointed to his case because "US Attorney [sic] office is bringing me back into court (between April 18 - May 5th, 2008) for some pending issues."  See Letter from Chand to Judge Brinkema (Apr. 14, 2008) (Docket No. 244).  Chand also complained about Robertson's conduct and his failure to respond to Chand about the PSR but, again, there is no mention

13

of any failure to file an appeal.  See id.

On April 8, 2008, Chand sent the Court a copy of a letter he wrote to Robertson on April 2, 2008 with the heading "for information only," in which he continued to complain about the case and his PSR.  In the postscript to that letter he mentions an appeal for the first time, stating, "[w]e also have an understanding that you will appeal the whole case after May 5, 2008."  This sentence completely contradicts Chand's claim in his affidavit that he instructed Robertson to file an appeal in November 2007.

In addition, on August 28, 2008, Chand, proceeding pro se, filed a Motion for Removal/Withdraw Attorney on [sic] Record (Docket No. 326), contending that Robertson failed to respond to his various requests.  Although he lists five specific complaints about Robertson's conduct, Robertson's failure to file an appeal was not listed as a basis for Chand's dissatisfaction.

Lastly, the Court observes that, during this time period, the United States Attorney was considering whether to file a Rule 35(b) motion.  The government finally filed that motion on September 24, 2008, and it was granted on October 24, 2008.  The motion resulted in Chand's sentence being reduced by over 60 percent.  Five days after his sentence was reduced, Chand filed his § 2255 motion.  Had Chand appealed his sentence, and thereby violated his plea agreement, the government most likely would not

14

have filed a Rule 35(b) motion.

Given this record there is no reliable evidence other than Chand's self-serving, highly impeached affidavit, that Chand directed Robertson to file an appeal within the time period in which an appeal could be filed.  To the extent that Chand raised the appeal issue in the April 2, 2008 letter to Robertson when he discussed appealing the whole case "after May 5, 2008", such a notice of appeal would have been a totally futile act because a notice of appeal in a criminal case must be filed within ten days of the sentence being imposed, or if excusable neglect is shown, 30 days.  See Fed. R. App. P. 4(b).  The final judgment was entered on November 9, 2007, and an amended judgment was entered on December 17, 2007 after a minor correction was made.  Even using the December 17, 2007 date, a notice of appeal had to be filed by December 27, 2007 or January 26, 2008, if excusable neglect was shown.  May 5, 2008 was over three months too late.

**B.   Prosecutorial Misconduct**

Chand claims that the government engaged in prosecutorial misconduct when the Assistant United States Attorney violated an alleged immunity agreement and broke other promises he made to Chand during plea negotiations.  Chand claims that the Assistant United States Attorney used information "protected by the proffer

15

letter" during the sentencing hearing before the Court.[6]  Mem. Br. 9.  However, Chand does not state with particularity what information was improperly used or how it violated the terms of an alleged immunity agreement or a proffer letter, neither of which are in the record.  Accordingly, the Court does not find that the government engaged in misconduct.

Chand also claims that the government breached certain promises made to him that were not included in the plea agreement, specifically promises as to immigration, his extradition/treaty transfer, and his bail motion and seeks relief under Santobello v. New York, 404 U.S. 257 (1971).  Chand, however, fails to provide any evidence, other than his own allegations, that the prosecutor made any of these promises to him or his attorney.  Moreover, Chand's plea agreement contained an integration clause that stated that "the defendant and his attorney acknowledge that no . . . promises, or representations have been made, nor agreements reached, other than those set forth in writing in his plea agreement, to cause the defendant to plea guilty."  See Plea Agreement ¶ 21.  Most significantly, Chand was asked during the plea colloquy whether he had any side deals or understandings not contained in the written plea agreement, and he answered "I don't think so."  Plea Hr'g Tr. 7.

---

[6] Although the heading of this section refers to an "immunity agreement," Chand refers to a "proffer letter" in his argument section.  Mem. Br. 9.

16

The Court then asked Abbenante whether there were any side deals or side agreements "other than what's written in the plea agreement." Id. Abbenante answered, "No, your Honor. The written plea agreement that's before the Court which you're questioning Mr. Chand about now is the complete agreement between Mr. Chand, myself, and the United States." Id. To be sure Chand had the same understanding, he was then asked, "Mr. Chand, is that your understanding as well?" to which he answered "yes". Id. Because Chand has not presented any evidence that any additional promises were made to him or his attorney, and the express terms of the plea agreement state that there were no such agreements, the Court concludes that the government did not breach the plea agreement. See, e.g., United States v. Peglara, 33 F.3d 412, 413 (4th Cir. 1994) ("[I]n enforcing plea agreements, the government is held only to those promises that it actually made to the defendant.").

C.    Sentence Disparities Among the Co-Conspirators

Chand also argues that his rights were violated because there were disparities between the sentences Chand and his co-conspirators received. Specifically, Chand claims that his attorney failed to argue at sentencing that the Court should depart from the Guidelines and give Chand a lesser sentence because Chand was eligible for deportation, and, therefore, would be ineligible for early release from prison. A co-conspirator of Chand, Naim Mann, did receive a downward departure, in part

17

because he was facing deportation, and Chand claims that he is entitled to the same relief.

Once again, Chand's averments in his affidavit are inaccurate. Robertson did ask the Court to consider the effect of Chand's potential deportation on his sentence. See Defendant's Position of [sic] Sentencing 4-5; Sentencing Hr'g Tr. 12. In the sentencing memorandum and at the hearing, Robertson mentioned that Chand was likely to receive a higher security designation from the Bureau of Prisons because he was facing removal. Id. In addition, he argued in his sentencing memorandum that the Court should consider that Chand was facing removal and the fact that he would be ineligible for placement in a halfway-house because of his status in evaluating the § 3553(a) factors. See Def.'s Position of [sic] Sentencing 4-5. The Court's decision not to grant Chand such a downward departure does not establish that Chand was rendered ineffective assistance.[7]

**D.  Violation of the Vienna Convention on Consular Relations**

Chand next claims that his rights were violated because law enforcement officials failed to notify the Canadian consulate of

---

[7] All six of the seven named defendants who pled guilty were required to plead to Count 1 (conspiracy) and a substantive count. The lead defendant, Abdul Hameed, who was found guilty upon admitting the facts, was sentenced to 212 months imprisonment. Bilal Saleem received the same 78 month sentence as Chand, but unlike Chand, has not had his sentence reduced. Other defendants received sentences similar to the 30 months Chand received after his sentence was reduced.

18

his arrest as is required by Article 36 of the Vienna Convention on Consular Relations ("Vienna Convention").  He claims that if he had been able to communicate with the Canadian Consulate, he might not have been pressured into pleading guilty by his attorney or might have been able to retain a competent attorney. He also contends that the failure to inform the consulate violated his constitutional rights and deprived him of due process.  These claims are without merit.

Article 36 of the Vienna Convention requires authorities of signatory nations who arrest a foreign national to notify the national's consulate of his arrest, if the foreign national so requests, and to allow the national to communicate with consular officials.  See Vienna Convention on Consular Relations art. 36, Apr. 24, 1963, 21 U.S.T. 77, 100-101.  However, Chand does not indicate that he asked law enforcement officials to contact the Canadian consulate.[8]  Moreover, the failure of arresting officials to notify a defendant of his rights to consular notification does not require vacating a guilty plea.  Cf. Sanchez-Llamas v. Oregon, 126 St. Ct. 2269, 2681 (2006) (holding that failure to inform defendant of his Article 36 rights did not require application of the exclusionary rule).

---

[8] The record is unclear as to whether Chand is a citizen of Canada.  The Pretrial Services Report indicated that Chand reported that he was a citizen of Pakistan.  However, the Presentence Report states that Chand is a citizen of both Pakistan and Canada.

19

**E.  Failure to Protect a Government Witness**

Chand claims that the government failed to protect him and his family from attacks from his co-defendants.  There is no evidence in the record to support the allegation that such attacks occurred.  Even if they had, such acts would not be a basis upon which to vacate, set-aside, or correct his sentence.

**F.  Restitution Order**

In the Statement of the Issues, Chand argues in "Issue Seven" that his rights were violated because he did not have a chance to contest the final Restitution Judgment entered on July 22, 2008.  This issue, however, is not addressed in Chand's supporting memorandum.  In his affidavit supporting the motion, Chand states that he was not given an opportunity to contest or correct the restitution order.  Chand Aff. ¶ 93.  He also claims that neither his attorney nor the Court informed him of the judgment against him.  Id.

Chand waived any objection to the restitution order in his Plea Agreement, where he agreed to "the entry of a Restitution Order for the full amount of the victims' losses."  Plea Agreement ¶ 10.  At the time of the plea, the government estimated the losses would total approximately $3,000,000, and this estimate is included in paragraph 10 of the Plea Agreement. Id.  During the colloquy, the Court reviewed paragraph 10 with Chand, who acknowledged that he would have to make restitution as part of his plea agreement.  Plea Hr'g Tr. 8.  He also told the

20

Court that he had discussed that issue with counsel.  Plea Hr'g
Tr. 9.  This record establishes that the Plea Agreement and the
discussion at the plea colloquy gave Chand clear notice of, and
Chand agreed to, the entry of a restitution order, and it was
estimated that restitution would amount to at least $3 million.
Plea Hr'g Tr. 17.  At the sentencing hearing, the Court informed
Chand again of his obligation to pay restitution to the victims
of his crimes once the final amount was determined by the Court,
and Chand stated that he understood.  Sentencing Hr'g Tr. 17.

When the Restitution Judgment was finally entered against
Chand on July 22, 2008, he was ordered to pay $3,133,984.44
jointly and severally with his co-defendants.  To the extent
Chand is arguing that he did not have an opportunity to contest
the final restitution order, the Court finds that Chand was not
prejudiced because he had already agreed to the entry of a
restitution order for the full amount of the victims' losses in
his plea agreement and at the sentencing hearing.  Moreover, the
final amount of restitution, $3,133,984.44, was not materially
different from the "at least $3 million" in losses the government
estimated in his plea agreement and at the sentencing hearing.
Accordingly, the Court finds that Chand's rights were not
violated by the entry of the Restitution Judgment because he had
several opportunities to object to it, but did not.

## III. Conclusion

For the above-stated reasons, Chand's § 2255 motion will be dismissed by an Order to be issued with this Memorandum Opinion.

Entered this __12th__ day of June, 2009.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge